UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RANKIN ROAD, INC., | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 10-cv-2226 |
| | § | |
| UNDERWRITERS AT LLOYDS OF | § | |
| LONDON, GULF COAST CLAIMS | § | |
| SERVICE, PAT DONOVAN AND | § | |
| JOHN ANDRES, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

Pending before the Court is Rankin Road Inc.'s ("Rankin Road" or "Plaintiff") Motion to Remand. (Doc. No. 8.) Having considered the parties' filings, all responses and replies thereto, and the applicable law, the Court finds that Plaintiff's Motion to Remand should be granted.

**I.  BACKGROUND**

Plaintiff is the owner of commercial property damaged by Hurricane Ike when the storm struck Houston, Texas, in September 2008. Shortly after the storm, Plaintiff filed a claim for property damage under a commercial property insurance policy issued by Underwriters at Lloyds of London ("Underwriters"). In turn, Underwriters retained Gulf Coast Claims Service ("Gulf Coast"), an independent insurance adjustment company, to adjust the loss. Gulf Coast first dispatched Patrick Donovan, and later, John Andres, to adjust Plaintiff's claim.

Plaintiff alleges various breach of contract and Texas Insurance Code violations against Defendants Underwriters, Gulf Coast, Donovan, and Andres related to the adjustment and alleged underpayment of Plaintiff's Hurricane Ike property damage claim. Plaintiff initially filed suit on April 23, 2010, in the 80th Judicial District Court of Harris County, Texas. (Doc. No. 1-3.) Defendants filed a Notice of Removal pursuant to 28 U.S.C. §1446(a) on June 23, 2010, on the basis of diversity jurisdiction. (Doc. No. 1.) In the Notice of Removal, Defendants acknowledge that one of the defendants, Gulf Coast, is a Texas citizen, and is therefore not diverse from Plaintiff. Rather, Defendants argue that Gulf Coast has been improperly joined in this action because Plaintiff has failed to establish a valid cause of action against Gulf Coast, and therefore Gulf Coast's citizenship should not be considered for purposes of jurisdiction.

## II.     LEGAL STANDARD

The removal statute, 28 U.S.C. § 1441(a), provides:

> [A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

Federal courts have original jurisdiction over any civil action "where the matter in controversy exceeds . . . $75,000 . . . and is between citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(2) (2005). The party that seeks removal has the burden of establishing that federal jurisdiction exists and that removal was proper. *Manguno v. Prudential Property & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citation omitted). Courts must strictly construe removal statutes in favor of remand and against removal. *Bosky v. Kroger Tex., L.P.*, 288 F.3d 208, 211 (5th Cir. 2002).

2

Under the fraudulent joinder doctrine, "federal removal jurisdiction premised on diversity cannot be defeated by the presence of an improperly joined non-diverse and/or in-state defendant." *Salazar v. Allsate Texas Lloyd's, Inc.*, 455 F.3d 571, 574 (5th Cir. 2006). To establish fraudulent joinder, the removing party must prove either that there has been actual fraud in the pleading of jurisdictional facts, or that there is no reasonable possibility that the plaintiff will be able to establish a cause of action against that party in state court. *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc), *cert. denied*, 544 U.S. 992 (2005). The defendant must demonstrate that there is no possibility of recovery by the plaintiff against the non-diverse defendant, that is, that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against the non-diverse defendant. *Id*. at 573 (citations omitted). A court may resolve this issue in one of two ways: by conducting a Rule 12(b)(6)-type analysis, looking at the allegations of the complaint to determine whether it states a claim under state law against the non-diverse defendant, or by piercing the pleadings and conducting a summary judgment-type inquiry. *Id.* Ordinarily, if a plaintiff can survive a 12(b)(6)-type challenge, there is no improper joinder. *Id*. When determining whether a party has been improperly joined, all factual allegations must be evaluated "in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff." *Burden v. General Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir. Tex. 1995).

Thus, in order to defeat Plaintiff's Motion for Remand, Defendants must show that this case was properly removed to this Court under 28 U.S.C. § 1441; that is, that Gulf Coast, a purportedly non-diverse defendant, was improperly sued by Plaintiff.

**III.    ANALYSIS**

The parties in this case do not dispute that Plaintiff and Defendant Gulf Coast are both Texas residents. Rather, Defendants argue that Gulf Coast was improperly joined in this case because: 1) Adjusters are not subject to the Texas Insurance Code; 2) Gulf Coast did not adjust the claim, but performed only "ministerial duties;" and, 3) Plaintiff's pleadings fail to sufficiently allege a specific factual basis for recovery against Gulf Coast. Defendants have failed, however, to make a sufficient showing that Plaintiff has not stated valid claim against Gulf Coast.

### A. ADJUSTER LIABILITY UNDER THE TEXAS INSURANCE CODE

Plaintiff contends that Gulf Coast is a "person" engaged in the business of insurance as defined under the Texas Insurance Code. In its Original Petition, Plaintiff asserts claims against Gulf Coast alleging violations of Chapter 541 of the Texas Insurance Code, which prohibits any "person" from engaging in any deceptive practices in the business of insurance. *See* TEX. INS. CODE § 541.003.

Defendants counter that Plaintiff has not stated a valid claim against Gulf Coast because, as an adjustment company, Gulf Coast is not subject to the Texas Insurance Code. Defendants argue that Gulf Coast is not in contractual privity with Plaintiff and, therefore, is not liable to Plaintiff under the Texas Insurance Code. In support of their position, Defendants cite a line of cases involving common law contract claims. *See Natividad v. Alexsis, Inc.,* 875 S.W.2d 695 (Tex. 1993). *Natividad* and other similar cases Defendants cite are inapposite, however, because they hold only that an adjuster owes no duty of *good faith and fair dealing* to an insured due it its lack of privity with the insured. *Natividad*, 875 S.W.2d at 697-698. The United States Court of Appeals for the Fifth Circuit subsequently held that *Natividad* was limited to the common law claim of

4

breach of good faith and fair dealing, and does not apply to statutory claims under the Texas Insurance Code. *Gasch v. Hartford Indemnity Co.*, 491 F.3d 278, 283 (5th Cir. 2007) (holding that extension of *Natividad* to Texas Insurance Code claims is "clearly precluded").

Defendants next argue that adjusters are not persons under the Texas Insurance Code because they do not "engage in the business of insurance." They cite a single Northern District of Texas case in support of this position. *See Woodward v. Liberty Mut. Ins. Co.*, No. 3:09-CV-0228-G, 2009 U.S. Dist. LEXIS 56257 (N.D. Tex. July 2, 2009). The case, however, actually holds that an *appraiser* appointed by the insurance company after the policy's appraisal clause was invoked was not a person for purposes of the Texas Insurance Code. The court did not address an *adjuster*'s liability under the Texas Insurance Code.

On the other hand, the Texas Insurance Code defines a "person" as "any individual, corporation, association, partnership, reciprocal or interinsurance exchange, Lloyds plan, fraternal benefit society, or other legal entity engaged in the business of insurance, including an agent, broker, *adjuster* or life and health insurance counselor." TEX. INS. CODE § 541.002(2) (emphasis added); *Campos v. American Bankers Ins. Co. of Florida, et al.*, No. H-10-0594, 2010 WL 2640139 (S.D. Tex. June 30, 2010). Not only does the statutory definition specifically list "adjuster" as one of the class of persons that engages in the business of insurance, but the Texas Supreme Court has specifically held that "[t]he business of insurance includes the investigation and adjustment of claims and losses." *Vail v. Texas Farm Bur. Mut. Ins. Co.*, 754 S.W.2d 129, 132 (Tex. 1988) (citing *Aetna Casualty & Surety Co. v. Marshall*, 724 S.W.2d 770, 771-72 (Tex. 1987)).

Moreover, in addition to finding *Natividad* was limited to claims of breach of good faith and fair dealing, the *Gasch* court specifically held that adjusters responsible for the servicing of insurance policies engage in the business of insurance and are, therefore, subject to the Texas Insurance Code. 491 F.3d 278 at 282. Thus, the plain language of the Texas Insurance Code, as well as Texas Supreme Court and Fifth Circuit precedent clearly demonstrate that an independent adjustment company like Gulf Coast can be held liable under the Texas Insurance Code.

The Court notes that finding independent adjusters subject to the Texas Insurance Code is consistent with a number of recent federal district court decisions from Texas. *See, e.g.*, *First Baptist Church v. GuideOne Mut. Ins. Co.,* No. 1:07-CV-988, 2008 WL 4533729, *5 & n.8 (E.D. Tex. Sept. 29, 2008) (finding potentially valid claim against independent adjuster under Texas Insurance Code); *Lindsey-Duggan, LLC v. Philadelphia Ins. Cos.*, SA-08-CA-736-FB, 2008 WL 5686084, at*2-3 (W.D. Tex. Dec. 15, 2008) (rejecting independent adjustment company's argument that it was not subject to the Texas Insurance Code); *Jones v. Ace American Insurance Co.,* No. 1:06-CV-616, 2006 WL 3826998, at *4-5 (E.D. Tex. Dec. 22, 2006) (holding that an adjuster can be subject to suit under the Texas Insurance Code); *McNeel v. Kemper Cas. Ins. Co.*, No. Civ. A. 3:04-CV-0734, 2004 WL 1635757, at *2-3 (N.D. Tex. July 21, 2004) (holding that an independent adjuster may be liable under the Texas Insurance Code); *Seabrook Marina, Inc. v. Scottsdale Ins. Co.*, No. CIV. A. G-10-88, 2010 WL 2383771, at *3-4 (S.D. Tex. June 9, 2010) (finding a potentially valid claim under the Texas Insurance Code against agents of independent adjusters); *Rocha v. Certain Underwriters at Lloyd's*

6

*of London*, No. 4:10-cv-2457, at *6 (S.D. Tex. Sep. 22, 2010) (recognizing valid Texas Insurance Code causes of action against an independent adjustment company).

### B.  GULF COAST'S ROLE IN SERVICING PLAINTIFF'S CLAIM

Defendants argue that, even if adjusters are subject to the Texas Insurance Code, Gulf Coast itself did not "adjust" Plaintiff's claim; rather, it merely undertook "ministerial duties." To support this contention, Defendants attach an affidavit from Gulf Coast's owner attesting to the fact that it merely acknowledged assignment of the claim, received and recorded information supplied by Plaintiff, and coordinated the investigation and communication among the insurer, insured, and the adjusters. The affidavit alleges that Donovan and Andres actually performed the adjustment activities and that Gulf Coast never visited the properties. Based on the evidence in the record, however, it appears Gulf Coast's admitted role in the adjustment of Plaintiff's claim independently qualifies as adjusting the claim for purposes of the Texas Insurance Code.

Attached to Defendants' Response is an undated letter addressed to Plaintiff and signed "Gulf Coast Claims Service," which states, "We are the adjusters representing R.S.I. International. Your storm damage claim was received 9/21/2008. Your adjuster will be assigned as soon as possible." Gulf Coast closes the letter by saying, "We will inspect your claim as soon as we possibly can, however, it may be several days." (Doc. No. 10-1.) Plaintiff points to another letter from Gulf Coast to Plaintiff's counsel dated May 10, 2010, which states "We are the independent adjuster appointed by Certain Underwriters at Lloyd's, London, the entity providing property insurance coverage for [Plaintiff's location]." (Doc. No. 8-2.) It goes on to state, "This letter is to inform you that, on behalf of Certain Underwriter's at Lloyd's, London, we do not agree with you on

7

the actual cash value of the property involved or on the amount of loss and damage you claimed as a result of the windstorm of September 13, 2008." *Id.*  A third letter from Gulf Coast to Plaintiff dated May 18, 2010, states, "As you know, we have been retained by your insurance carrier, Certain Underwriters at Lloyds, London, to investigate the above noted claim you have submitted under your policy." (Doc No. 10-8.)  The letter informs Plaintiff that certain exclusions and limitations within the policy caused Underwriters not to be unable to respond to part of Plaintiff's claim." *Id.*  Notably, the second and third letters were printed on Gulf Coast's letterhead and singed by John Andres.

Contrary to Defendants' assertions, these letters indicate that Gulf Coast was heavily involved in the adjustment process and that, at the very least, it held itself out as Plaintiff's claim's adjuster.  Indeed, Gulf Coast repeatedly referred to itself as the "adjuster" of Plaintiff's claim and it was apparently involved in all of the major events in the adjustment process.  Apart from Donovan and Andres' conduct, Gulf Coast's own role in the process appears to qualify as "adjusting" the claim.  Indeed, Texas Insurance Code Section 4101.001 includes "supervis[ing] the handling of claims," within the definition of adjuster.  TEX. INS. CODE § 4101.001.  Gulf Coast admits to coordinating the adjusters' activities and communicating the results of the investigation to Plaintiffs. Additionally, Gulf Coast's letters indicate that Gulf Coast supervised the handling of Plaintiff's claim.

Moreover, Gulf Coast may be held liable on a theory of vicarious liability for Andres and Donovan's violations of the Texas Insurance Code within the scope of their authority as agents of Gulf Coast.  Of course, Gulf Coast, like other entities, can act only

8

through agents. Although, based on the record, the actual relationship between Gulf Coast and Andres and Donovan is unclear, the three letters indicate that the two men acted on Gulf Coast's behalf. Based on common law principal-agency theory, which applies to claims under the Texas Insurance Code, an agent's actions in the scope of its authority renders the principal liable for its misconduct. *See e.g., Celtic Life Ins. Co. v. Coats*, 885 S.W. 2d 96, 98-99 (Tex. 1994). While it is not clear whether Gulf Coast gave Donovan and Andres actual authority to act on its behalf, Gulf Coast held out the two men as its agents. A party seeking to charge a principal through the apparent authority of an agent must establish conduct by the principal that would lead a reasonably prudent person to believe the agent had the authority it purported to exercise. *NationsBank v. Dilling,* 922 S.W.2d 950, 952-53 (Tex. 1996); *Royal Globe Ins. Co. v. Bar Consultants Inc*., 577 S.W. 2d 688, 693-94 (Tex. 1979). In this case, Gulf Coast sent letters to Plaintiff *signed by* Anders on Gulf Coast letterhead containing important information about the valuation and coverage of Plaintiff's claim. Moreover, Gulf Coast stated in its first letter that it would inspect Plaintiff's claim and assign an adjuster as soon as possible. Donovan arrived shortly thereafter to inspect the properties.

Thus, Gulf Coast's letters were sufficient to cause a reasonably prudent person to believe Donovan and Anders were acting on behalf of Gulf Coast when they investigated Plaintiff's claim. Therefore, even if Andres and Donovan were not Gulf Coast employees or authorized agents, there is, at the very least a material issue of fact as to whether Gulf Coast clothed them with apparent authority sufficient to confer liability on Gulf Coast for their conduct related to the adjustment of Plaintiff's claim.

Thus, the Court concludes that the Texas Insurance Code recognizes a cause of action against companies such as Gulf Coast even if Gulf Coast merely supervised the activities of Donovan and Andres. In addition, construing all facts in Plaintiff's favor, there is at least a material issue of fact as to whether Donovan and Andres acted under apparent authority, rendering Gulf Coast liable for their misconduct as well.

### C. FAILURE TO ALLEGE SUFFICIENT FACTS TO STATE A CLAIM

Finally, Defendants argue that Gulf Coast was improperly joined because, even if Gulf Coast were subject to the Texas Insurance Code, Plaintiff's pleadings fail sufficiently to allege a specific factual basis for recovery. Defendants claim Plaintiff's petition contains only conclusory recitations of the law without naming specific actions taken by Gulf Coast that allegedly violated the law. According to Defendants, such a pleading is not sufficient to show a reasonable basis for the Court to predict that Plaintiff might be able to recover from Gulf Coast, the only non-diverse Defendant.

Plaintiff's Original Petition, however, clearly alleges that its property sustained damage, that it filed an insurance claim with Underwriters, that Underwriters assigned Gulf Coast to adjust its insurance claim, and that Gulf Coast and the adjusters it assigned to the claim failed to fulfill their task in compliance with the law. The Original Petition lists specific ways in which Gulf Coast, Andres, and Donovan violated the law, including, among other things, that Donovan told Plaintiff everything was covered under the policy, that Donovan was non-communicative for months, that Anders came to inspect the premises wearing shorts and sandals and behaved unprofessionally, that Gulf Coast, Andres and Donovan misrepresented to Plaintiff that the damage to its property was not covered under their insurance policy, that Gulf Coast, Anders, and Donovan

failed to attempt to settle Plaintiff's claim in a fair manner, that Gulf Coast, Anders, and Donovan failed to explain the reasons for an offer of an inadequate settlement, and that Gulf Coast, Anders, and Donovan failed to affirm or to deny coverage within a reasonable time.

Defendants' argument, in essence, appears to be that Plaintiff's pleadings are insufficiently detailed to meet federal pleading requirements. However, this argument is of limited relevance to the current inquiry whether there is a reasonable basis to predict that Plaintiff might recover against Gulf Coast in *state court*. *See KIW, Inc. v. Zurich American Ins. Co.*, No. H-05-3240, 2005 WL 3434977, at *3, (S.D. Tex. Dec. 14, 2005) (applying Texas state law "fair notice" pleading standard to "liberally" construe pleadings in improper joinder inquiry); *Rodriguez v. Yenawine*, 556 S.W.2d 410, 415 (Tex. Civ. App.-Austin 1977, no writ) ("Texas courts have upheld the pleading when the technical elements of a cause of action, without allegations of ultimate facts to be proved, were alleged in the petition.").

## IV. CONCLUSION

Because Defendants have failed to establish that Gulf Coast, a non-diverse Defendant, was improperly joined in this case, the Court lacks diversity jurisdiction. Plaintiff's Motion to Remand (Doc. No. 8) is **GRANTED**. This action is hereby **REMANDED** to the 80th District of Harris County, Texas.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 12th day of October, 2010.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

12